UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

THURSTON D. GROSS and
CHELSEY MORALES,

                                        Plaintiffs,

        -against-                                                1:14-cv-0736 (LEK/TWD)

THE CITY OF ALBANY, *et al.*,

                                        Defendants.
_____

## MEMORANDUM-DECISION and ORDER

## I.    INTRODUCTION

        Plaintiffs Thurston D. Gross ("Gross") and Chelsey Morales ("Morales") (collectively

"Plaintiffs") filed this action against Defendants City of Albany ("the City"), Albany Housing

Authority ("the AHA"), John Doe, and Jane Doe (collectively "Defendants") pursuant to 42 U.S.C.

§ 1983 for violations of their constitutional rights that allegedly occurred during a police training

exercise that the City conducted on March 21, 2013 at a low-income housing complex operated by

the AHA.  Dkt. No. 1 ("Complaint").  Presently before the Court are the City's Motion to dismiss

pursuant to Federal Rule of Civil Procedure 12(b)(6), Dkt. Nos. 11 ("City Motion"); 11-6 ("City

Memorandum"), the AHA's Letter Request to join the City's Motion, Dkt. No. 15 ("Letter

Request"), and the AHA's Motion to dismiss, Dkt. Nos. 16 ("AHA Motion"); 16-1 ("AHA

Memorandum").  Plaintiffs filed a Response in Opposition, Dkt. No. 20 ("Opposition"), and the

City and AHA filed Replies, Dkt. Nos. 22 ("AHA Reply"); 24 ("City Reply").  For the following

reasons, Defendants' Motions are granted in part and denied in part.

## II.    BACKGROUND[1]

On March 21, 2013, the Albany Police Department conducted a training exercise at the Ida Yarbrough public housing complex ("the Complex") in Albany, New York.  Compl. ¶ 1.  Plaintiffs allege that the Complex is owned and managed by the AHA.  Id. ¶ 5.  The Complex is comprised exclusively of low-income individuals and families.  Id. ¶¶ 19-21.  The overwhelming majority of Complex residents are African-American or Latino.  Id. ¶ 22.  Plaintiffs allege that Defendants failed to provide Complex residents with any advance notice that the exercise would be taking place.  Id. ¶ 18.  Gross, an African-American male, was a resident of the Complex at the time of the exercise.  Id. ¶ 2.  Morales, a Puerto Rican female, was visiting a friend who lived at the Complex at the time of the exercise.  Id. ¶ 3.

During the training exercise, members of the Albany Police Department "exploded explosive charges, shot ammunition with firearms, used tear-gas or some similar type of aerosol irritant, used mock blood, violently entered a vacant apartment at 153 Yarbrough, yelled and made other loud noises, used police radios to transmit information about what they were doing, and acted out a training scenario involving an alleged hostage situation inside the vacant apartment."  Id. ¶ 26.  The area surrounding the exercise was "splattered with mock blood, smelled of tear gas or some similar chemical irritant, and was littered for weeks with shell casings."  Id. ¶ 28.  Many children lived in the Complex and were exposed to the littered shell casings and mock blood stains for weeks

---

[1] Because this matter is before the Court on a motion to dismiss, the allegations of the Complaint are accepted as true and form the basis of this section.  See Boyd v. Nationwide Mut. Ins. Co., 208 F.3d 406, 408 (2d Cir. 2000); see also Matson v. Bd. of Educ., 631 F.3d 57, 72 (2d Cir. 2011) (noting that, in addressing a motion to dismiss, a court must view a plaintiff's factual allegations "in a light most favorable to the plaintiff and draw[] all reasonable inferences in her favor").

following the exercise.  Id. ¶ 29.

During the exercise, Gross attempted to enter the parking lot adjacent to his home.  Id. ¶ 31.
An armed, uniformed, on-duty police officer prevented him from using the parking lot.  Id.  Gross
was later prevented from visiting a friend's apartment within the Complex and was "angrily
threatened" by an officer with arrest if he continued attempting to visit his friend's home.  Id. ¶ 33.
The residence Gross attempted to visit was not within the taped-off area where the exercise was
taking place.  Id. ¶ 34.

Morales was visiting a friend in the Complex at the time of the exercise, and was told by
officers that she was not allowed to leave her friend's apartment.  Id. ¶¶ 37-39.  Morales was
threatened with arrest if she attempted to leave the residence.  Id. ¶ 40.  As with the residence Gross
attempted to visit, the residence where Morales was visiting was not within the taped-off area where
the exercise was taking place.  Id. ¶ 41.  While she was confined in the residence, Morales
overheard police radio transmissions which led her to believe that there was an actual hostage
situation in the immediate vicinity.  Id. ¶ 45.

Plaintiffs contend that Defendants' actions resulted from "bias against the residents and
guests of the [Complex] based on the race, national background, ethnicity, and/or economic status
of the majority of the residents."  Id. ¶ 48.  They allege that Defendants' actions were "scary,
intimidating, hostile and antagonistic" and directly and proximately caused Plaintiffs' severe
emotional pain and suffering as well as other unspecified injuries and damages.  Id. ¶¶ 53-54.
 Plaintiffs assert that Defendants acted intentionally to violate Plaintiffs' clearly established
constitutional rights, including freedom from unreasonable and unlawful seizures by law
enforcement officers, freedom of movement, freedom of association, liberty, due process, and equal

3

protection.  Id. ¶ 50.

In addition to the City and the AHA, Plaintiffs also bring claims against "John Doe" and "Jane Doe" Defendants, who are intended to represent all officials and officers of the Albany Policy Department or the AHA who planned, implemented, or otherwise participated in the exercise.  Id. ¶ 6.  Plaintiffs contend that since the exercise was planned and implemented by high-ranking officials from the City and the AHA, these actions constitute the official policy of these entities.  Id. ¶ 52.

On June 19, 2013, Plaintiffs filed a Notice of Claim with the City of Albany.  See Dkt. No. 11-3 ("Notice of Claim Forms").  On June 18, 2014, Plaintiffs commenced this action.  Compl. Plaintiffs assert claims arising under the First, Fourth, and Fourteenth Amendments.  Id. ¶¶ 55-62. Plaintiffs also assert claims for unlawful imprisonment, id. ¶¶ 63-64, and negligent training, supervision, and discipline of police officers, id. ¶¶ 65-66.

On September 4, 2014, the City filed the Motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) that is presently pending before the Court. City Mot.  On September 16, 2014, the Housing Authority filed a Letter Request seeking permission to join the City's Motion, and submitting an accompanying Motion to dismiss.  AHA Let.; AHA Mot.

## III.   LEGAL STANDARD

### A.  Rule 12(b)(6)

To survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also FED. R. CIV. P. 12(b)(6).  A court must

4

accept as true the factual allegations contained in a complaint and draw all inferences in favor of a plaintiff. See Allaire Corp. v. Okumus, 433 F.3d 248, 249-50 (2d Cir. 2006). A complaint may be dismissed pursuant to Rule 12(b)(6) only where it appears that there are not "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. Plausibility requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct]." Id. at 556. The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. (citing Twombly, 550 U.S. at 555). Where a court is unable to infer more than the mere possibility of the alleged misconduct based on the pleaded facts, the pleader has not demonstrated that she is entitled to relief and the action is subject to dismissal. See id. at 678-79.

## IV. DISCUSSION

### A. Motion to Join

Where a motion to join is unopposed, the arguments proffered by the defendant initiating the motion apply equally to all co-defendants, and granting the motion to join will not prejudice the plaintiff, the motion to join is generally granted. Gulf Coast Dev. Grp., LLC v. Lebror, No. 02 Civ. 6949, 2003 WL 22871914, at *1 n.1 (S.D.N.Y. Dec. 23, 2003); see also Sacay v. Research Found. of City Univ. of N.Y., 44 F. Supp. 2d 505, 509 (E.D.N.Y. 1999) (granting co-defendants' motion to join defendants' motion for judgment on the pleadings as the arguments in the motion applied equally to co-defendants and permitting co-defendants to join would not result in any prejudice to plaintiff).

The AHA seeks to join the City's Motion to dismiss and has also submitted a separate Motion to dismiss setting forth arguments specific to the AHA's involvement in this case, pending the Court's approval.  See AHA Let. Req.; AHA Mot.; AHA Mem.  Plaintiffs do not oppose the AHA's Request, and it does not appear that Plaintiffs will suffer any prejudice if the Court grants the AHA's Request to join the City's Motion to dismiss.  Consequently, the AHA's Request is granted, and the Court will address both Defendants' Motions to dismiss in this Memorandum-Decision and Order.

### B.  Municipal Liability

Defendants argue that the Complaint fails to sufficiently allege that Defendants' conduct resulted from a municipal policy or custom, as required under Monell v. Department of Social Services, 436 U.S. 658, 694-95 (1978).  Mot. at 11-15.  The City asserts that the Complaint contains legal conclusions with no supporting factual allegations suggesting that the City failed to properly train, supervise and/or discipline its officers.  Id. at 14.  The AHA argues that the planning of the police department training exercise is insufficient to constitute an "official policy" on behalf of the AHA.  AHA Mot. at 14.  Plaintiffs counter that because high-ranking officials from both entities were involved in planning and implementing the exercise, liability can attach under the "final policy making authority" theory established in City of St. Louis v. Praprotnik, 485 U.S. 112, 123 (1988). Opp'n at 15.

In order to establish liability on behalf of a municipality under § 1983, a plaintiff must plead and prove that the deprivation of his constitutional rights "was caused by a governmental custom, policy, or usage of the municipality."  Jones v. Town of E. Haven, 691 F.3d 72, 80 (2d Cir. 2012) (citing Monell, 436 U.S. 658).  "The plaintiff must first prove the existence of a municipal policy or

6

custom in order to show that the municipality took some action that caused his injuries beyond

merely employing the misbehaving officer.  Second, the plaintiff must establish a causal

connection—an 'affirmative link'—between the policy and the deprivation of his constitutional

rights." Vippolis v. Vill. of Haverstraw, 768 F.2d 40, 44 (2d Cir. 1985).  A municipality may be

liable with regard to policies or customs resulting in inadequate training, supervision, or hiring when

the failure to train, supervise, or hire amounts to deliberate indifference to the rights of those with

whom municipal employees will come into contact.  Gray-Davis v. New York, No. 14-CV-1490,

2015 WL 2120518, at *6 (N.D.N.Y. May 5, 2015) (citing City of Canton v. Harris, 489 U.S. 378,

388-89 (1989)).  Deliberate indifference is found where municipal employees "in exercising their

discretion, so often violate constitutional rights that the need for further training must have been

plainly obvious to the city policymakers." City of Canton, 489 U.S. at 390 n.10.  Therefore, a

plaintiff must demonstrate that the municipality, through its own deliberate conduct, was the

"moving force" behind the alleged injury.  Roe v. City of Waterbury, 42 F.3d 31, 37 (2d Cir. 2008).

     Normally, a single incidence of unconstitutional conduct is insufficient to establish

municipal liability, unless there is proof that the incident was caused by an existing, unconstitutional

municipal policy that can be attributed to the municipal policymaker.  City of Oklahoma v. Tuttle,

471 U.S. 808, 823-24 (1985); see also Brogdon v. City of New Rochelle, 200 F. Supp. 2d 411, 427

(S.D.N.Y. 2002) ("A single incident by itself is generally insufficient to establish the affirmative

link between the municipal policy or custom and the alleged constitutional violation.").  Where a

plaintiff attempts to claim that a municipality is responsible for inadequate training and supervision

of its police force, the plaintiff must also show that there is an affirmative link between the training

inadequacies alleged and the particular constitutional violation at issue.  Tuttle, 471 U.S. at 824 n.8;

7

Roe, 542 F.3d at 37.

Municipal liability may attach where the harm alleged occurred as a result of a single decision, as long as the decision was made by a final policymaker that had sufficient power to act on behalf of the municipality. Pembaur v. Cincinnati, 475 U.S. 469, 480 (1986). As the Court reasoned in Pembaur, municipal liability "attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." Id.

At the motion to dismiss stage, a plaintiff is not required to prove these elements; however, the complaint "must plead them sufficiently to make out a plausible claim for relief." Tieman v. City of Newburgh, No. 13-CV-4178, 2015 WL 1379652, at *13 (S.D.N.Y. Mar. 26, 2015). Although complaints alleging municipal liability are not subject to a heightened pleading requirement, see Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168 (1993), a complaint still must satisfy the pleading requirements established in Twombly, 550 U.S. 544 and Iqbal, 556 U.S. 662. "Thus, to survive a motion to dismiss, Plaintiff cannot, through conclusory allegations, merely assert the existence of a municipal policy or custom, but 'must allege facts tending to support, at least circumstantially, an inference that such a municipal policy or custom exists.'" Tieman, 2015 WL 1379652, at *13 (quoting Santos v. City of New York, 847 F. Supp. 2d 573, 576 (S.D.N.Y. 2012). Mere allegations of a municipal custom or inadequate training and/or supervision are insufficient to state a plausible claim of municipal liability unless supported by factual details. Tieman, 2015 WL 1379652, at *13.

Plaintiffs' conclusory allegations that the City failed to properly hire, supervise, and train the police officers who carried out the exercise are insufficient to establish a municipal policy or

custom.  See, e.g., Gray-Davis, 2015 WL 2120518, at *6 (dismissing plaintiff's § 1983 claim where plaintiff asserted only conclusory allegations that municipality failed to properly train and supervise employees); Hall v. Smith, 170 F. App'x 105, 108 (11th Cir. 2006) (affirming dismissal of § 1983 action against municipality where complaint did not contain any factual support for conclusory statements that municipality had a policy or custom of inadequate supervision and training).

However, the Court finds that the Complaint narrowly passes the threshold of plausibility under the "final decision-maker" theory.  At the motion to dismiss stage, the Court finds that the Complaint alleges enough facts to state a plausible claim that the conduct giving rise to the Complaint was planned and implemented by high-ranking officials and policy-makers from both the City and the AHA with final decision-making authority, as established in City of St. Louis v. Praprotnik, 485 U.S. 112, 123 (1988).  Opp'n at 15.  Plaintiffs argue that the specific identities of these individuals will be revealed during discovery, and that the allegations in the Complaint are sufficient to give Defendants fair notice of Plaintiffs' claims and the grounds upon which they rest. Id.  The Court recognizes the difficulty that Plaintiffs face in obtaining further factual support for the specific role each Defendant played in planning and implementing the training exercise without first being able to obtain discovery.  Consequently, the Court finds that the Complaint contains enough facts to support a plausible claim that the constitutional violations alleged resulted from conduct that was planned and orchestrated by individuals with final decision-making authority from the City and the AHA.

**C.  Personal Involvement by AHA Personnel**

The AHA argues that Plaintiffs have failed to allege the personal involvement of any AHA personnel.  AHA Mem. at 5.  Specifically, the Complaint states that "Defendant Housing Authority

9

is the employer of all officials and employees of the Housing Authority, including all such officials and/or employees who participated in any manner in the planning, approval, and implementation of the police training exercise that occurred on March 21, 2013, at the Ida Yarbrough housing complex." Compl. ¶ 5.  Plaintiffs allege that based on information and belief, the AHA is the owner and manager of the Complex.  Id.  The Complaint also names as John and Jane Doe Defendants any officials and/or officers of the AHA who planned and/or assisted in planning or implementing the training exercise.  Id. ¶ 6.  Accepting the allegations contained in the Complaint as true, and drawing all reasonable inferences in Plaintiffs' favor, the Court finds that it is plausible that as the owner and manager of the Complex, AHA was involved in the planning, implementation, and execution of the training exercise.  Consequently, the Court finds that Plaintiffs have set forth sufficient factual allegations to allege the personal involvement of AHA personnel.  Moreover, the Court recognizes the difficulty Plaintiffs face in identifying particular defendants without having first had the opportunity to conduct discovery.  Accordingly, the AHA's Motion to dismiss based on Plaintiffs' failure to allege the personal involvement of the AHA is denied.

### D.  Fourth Amendment

The Fourth Amendment, as applied to the states by the Fourteenth Amendment, provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized."  U.S. CONST. amend. IV.[2]  In order to determine

---

[2] The Fourth Amendment was made applicable to the states by the Fourteenth Amendment. See Mapp v. Ohio, 367 U.S. 643 (1961).

whether an individual's Fourth Amendment rights have been violated, the Court must engage in a two-part analysis: (1) considering all of the circumstances of the case, was there a "seizure" within the meaning of the Fourth Amendment; and (2) if there was a seizure, was such seizure reasonable. Robinson v. Town of Colonie, 878 F. Supp. 387, 396 (N.D.N.Y. 1995).

Plaintiffs contend that police interference with their ability to move freely about the Complex constitutes an unlawful seizure in violation of the Fourth Amendment. Defendants argue that Plaintiffs' Fourth Amendment Claims should be dismissed because the allegations in the Complaint do not rise to the level of an unlawful seizure. City Mem. at 4-7.

The Supreme Court has clarified that a "[p]erson has been seized within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." United States v. Mendenhall, 446 U.S. 544, 554 (1980). The Supreme Court enumerated several other factors that could indicate that a seizure has occurred, absent any physical restraint: "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." Id. "In the absence of some such evidence, otherwise inoffensive conduct between a member of the public and the police cannot, as a matter of law, amount to a seizure of that person." Id. at 555. "Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a seizure has occurred." Florida v. Bostock, 501 U.S. 429, 434 (1991) (quoting Terry v. Ohio, 392 U.S. 1, 19 n.16 (1968)). When a person claims that his or her liberty is restrained by an officer's "show of authority," a seizure does not occur unless he or she yields to that show of authority. California v. Hodari, 499 U.S. 621, 626,

11

(1991); see also Brendlin v. California, 551 U.S. 249, 254 (2007) ("A police officer may make a seizure by a show of authority and without the use of physical force, but there is no seizure without actual submission; otherwise, there is at most an attempted seizure, so far as the Fourth Amendment is concerned.").

The Supreme Court has acknowledged that the test for determining when an encounter becomes a seizure is imprecise "[b]ecause it is designed to assess the coercive effect of police conduct, taken as a whole, rather than to focus on particular details of that conduct in isolation." Michigan v. Chesternut, 486 U.S. 567, 573 (1988). The reasonable person standard "[e]nsures that the scope of Fourth Amendment protection does not vary with the state of mind of the particular individual being approached." Id. at 574.

Generally, courts have found that no seizure takes place where a plaintiff is restricted from entering or removed from a certain area, as long as the plaintiff is generally free to go anywhere else. See, e.g., Sheppard v. Beerman, 18 F.3d 147, 153 (2d Cir. 1994) (finding no seizure where law clerk was removed from judge's chambers and escorted out of courthouse because the clerk was "free to go anywhere else that he desired, with the exception of chambers and the court house"); Robinson, 878 F. Supp. at 402 (finding no seizure where police officers requested that the plaintiffs leave a store and threatened arrest if they failed to comply because plaintiffs were "always free to go anywhere they wanted as long as they did not remain in the store"); Posr v. Killackey, No. 01Civ.2320, 2003 WL 22962191, at *7 (S.D.N.Y. Dec. 17, 2003) (finding no seizure where videographer was escorted from family court proceeding and prohibited from reentering).

    *1. Gross*

Gross alleges that a "seizure" took place when officers told him that he could not visit a

friend's apartment or access a parking lot while the training exercise was taking place. Compl. ¶¶ 30-36. Even construing the Complaint in the light most favorable to Gross, the Court finds that he was merely prevented from interfering with the police training exercise, but was otherwise free to come and go as he pleased. There are no allegations in the Complaint that he was otherwise restricted in his movement, that they he was arrested or detained in any manner, or that he was not able to terminate his interaction with police officers at any time. See Robinson, 878 F. Supp. at 402. The Court finds that Gross has failed to state a claim that a seizure took place in violation of the Fourth Amendment. Accordingly, his Fourth Amendment claims are subject to dismissal.

### 2. Morales

Morales alleges that a "seizure" took place when she was prevented from exiting an apartment while the training exercise was ongoing. Compl. ¶¶ 37-45. The Complaint is silent as to how long Morales was prevented from leaving the apartment. See id. Morales also alleges that the residence where she was visiting a friend was not within the area which had been taped-off by police for use in the training exercise. Id. ¶ 41. She further alleges that she overheard police radio transmissions which initially led her to believe that there was an actual hostage situation on the premises. Id. ¶ 45. With respect to Morales, the Court finds that the Complaint sets forth sufficient facts to state a plausible claim that a seizure took place. See Mendenhall, 446 U.S. at 554 (finding that a seizure has occurred where a "reasonable person would have believed that he was not free to leave"); see also Terry, 392 U.S. at 19 n.6 (finding that a seizure occurs "when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen"); United States v. Gori, 230 F.3d 44, 49 (2d Cir. 2000) (finding that a seizure took place where police showed authority by issuing orders and occupants of apartment submitted). Morales was prevented

13

from leaving the residence where she was a guest, was detained in the residence against her will, and unlike Gross, was not able to freely move about other areas within the Complex. The fact that Morales may only have been detained momentarily is of no import. See Brendlin, 551 U.S. at 255 (acknowledging that a seizure can occur even where a resulting detention is quite brief). Moreover, Morales was not able to terminate her interaction with law enforcement officers voluntarily, but rather, was forced to stay in the apartment until police told her that the exercise was over. Therefore, unlike Gross, it appears that police "intentionally restrain[ed] and controll[ed] [Morales'] movements, thereby transforming their encounter, even if only briefly, into a detention, which qualifies as a seizure of [Morales'] person." Salmon v. Blesser, No. 14-1993-cv, 2015 WL 5254851, at *4 (2d Cir. Sept. 10, 2015).

Defendants argue that any detainment of Morales while the training exercise was ongoing was reasonable and justified under the City's community caretaking function. City Mem. at 6. Plaintiffs argue that the community caretaking function does not apply to the present case, and instead is limited to situations where the police are responding to "emergency situations that require[] a police presence to maintain public order or ensure public health." Opp'n at 12.

The community caretaking exception was first recognized in Cady v. Dombrowski, 413 U.S. 433 (1973). There, the Court sustained the search of an automobile's trunk as a legitimate exercise of the community caretaking function. Id. at 439. The Court noted that Fourth Amendment jurisprudence has long distinguished automobile searches from searches of the home for two reasons. Id. at 440-42. First, cars are inherently mobile, lending greater justification for to warrantless searches. Id. Second, the highly-regulated nature of motor vehicles means that police have frequent contact with them, and any contents, including contraband, may be in plain view for

reasons wholly unrelated to the investigation of crime. Id. In Cady, the search was conducted not for investigative purposes, but rather for safety reasons—the car had been towed to a garage lot which was not secured, and any weapons left inside would have been accessible to vandals. Id. at 443. When crafting this exception to the Fourth Amendment, the Court reasoned that the police are expected to undertake "community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." Id. at 441.

Circuit courts are divided as to whether the community caretaking function is limited to the automobile context, or as Defendants argue, it applies to police activity more broadly. See Sutterfield v. City of Milwaukee, 751 F.3d 542, 552-56 (7th Cir. 2014) (stating that the Third, Ninth, Seventh, and Tenth circuits have confined the exception to the automobile context, while the Fifth, Sixth, and Eighth Circuits have allowed the exception to apply to searches of the home). Recently, the Second Circuit rejected the application of the community caretaking exception to a search of residential property in Harris v. O'Hare, 770 F.3d 224, 239 n.10 (2d Cir. 2014). "While legal ambiguity as to the reach of a doctrine favors qualified immunity, Defendants point us to nothing in the community caretaking jurisprudence that might imply this exception to the warrant requirement would apply to facts at all analogous to the warrantless entry of enclosed residential property at issue here." Id.

Defendants rely only on out-of-circuit precedent in support of their argument that the community caretaking function should be broadly construed. City Reply at 2-4 (citing United States v. Rodriguez-Morales, 929 F.2d 780, 784-85 (1st Cir. 1991) ( "The rubric is a catchall for the wide range of responsibilities that police officers must discharge aside from their criminal enforcement activities"); United States v. King, 990 F.2d 1552, 1560 (10th Cir. 1993) ("In the course of

exercising this noninvestigatory function, a police officer may have occasion to seize a person, as

the Supreme Court has defined the term for Fourth Amendment purposes, in order to ensure the

safety of the public and/or the individual, regardless of any suspected criminal activity.")).

However, this broad reading of the community caretaking function has not been endorsed by the

Second Circuit.  See Harris, 770 F.3d 224, 239 n.10 (2d Cir. 2014).  Accordingly, the Court finds

that the community caretaking exception is inapplicable to the present case.

### E.  Equal Protection

Plaintiffs assert that Defendants' actions "resulted from bias against the residents and guests

of the Ida Yarbrough housing complex based on the race, national background, ethnicity, and/or

economic status of the majority of the residents of Ida Yarbrough."  Compl. ¶ 48.  The Complaint

contains no other factual allegations in support of an Equal Protection claim.  See generally Compl.

In their Memorandum, Plaintiffs argue that by selecting and using a low-income housing

neighborhood for the police training exercise, comprised of primarily minority residents, Defendants

deliberately discriminated against Plaintiffs.  Opp'n at 16-17.

The Equal Protection Clause protects against the "selective adverse treatment of individuals

compared with other similarly situated individuals if such selective treatment was based on

impermissible considerations such as race, religion, intent to inhibit or punish the exercise of

constitutional rights, or malicious or bad faith intent to injure a person."  Bizarro v. Miranda, 394

F.3d 82, 86 (2d Cir. 2005) (internal quotation marks omitted).  In Bush v. City of Utica, the

plaintiffs alleged that the defendants violated the Equal Protection Clause by selectively withholding

protective services for individuals living in a low-income neighborhood.  948 F. Supp. 2d 246, 258

(N.D.N.Y. 2013).  This allegation was supported by additional facts, including a statement from the

City's Fire Chief that he was not willing to risk the lives of firefighters for residents of the

neighborhood at issue, as well as an alleged "don't go in" policy for all fires which took place at

low-income properties in the City of Utica. Id. The Bush Court found that plaintiffs had

sufficiently alleged that defendants selectively withheld government services because certain

individuals lived in a low-income neighborhood. Id. at 259.

Plaintiffs do not allege in the Complaint that they were treated differently than other

similarly situated individuals. Moreover, in support of their Equal Protection Claims, the Complaint

offers only a conclusory allegation, which merely recites the elements of an Equal Protection claim.

Compl. ¶ 48. Unlike Bush, the Complaint fails to set forth any specific examples to show that

Plaintiffs were treated differently than other similarly situated individuals, or that Defendants were

motivated by discriminatory intent.

In their Opposition, Plaintiffs assert that Defendants "would likely not have chosen a more

affluent, majority-white neighborhood" for the exercise. Opp'n at 17. Plaintiffs contend that these

are the similarly situated individuals for the purposes of their Equal Protection Claim. Id.

However, the Complaint does not contain any allegations with respect to similarly situated

individuals. As Defendants correctly point out, Plaintiffs cannot use their Opposition to cure

deficiencies in the original Complaint. See City Reply at 5; see also Shah v. Helen Hayes Hosp.,

252 F. App'x 346, 366 (2d Cir. 2007) ("A party may not use his or her opposition to a dispositive

motion as a means to amend the complaint."). Accordingly, Plaintiffs' conclusory allegation that

Defendants violated their right to Equal Protection is insufficient, and Plaintiffs' Equal Protection

claims are subject to dismissal.

**F.  Substantive Due Process**

Plaintiffs allege that Defendants violated their right not to be deprived of liberty without due process of law. Compl. ¶ 60. Defendants argue that Plaintiffs' due process claims should be analyzed under the Fourth Amendment, rather than the more generalized due process standard. City Mem. at 8. "Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'" Albright v. Oliver, 510 U.S. 266, 273 (1994) (quoting Graham v. Connor, 490 U.S. 386, 395 (1989)).

The core of Plaintiffs' substantive due process claim is that they were deprived of a protected liberty interest while the training exercise was ongoing. Where the "crux" of a substantive due process claim is derived from an explicit textual source, such as a seizure under the Fourth Amendment, dismissal of the substantive due process claim is appropriate. See, e.g., Heidorf v. Town of Northumberland, 985 F. Supp. 250, 257 (N.D.N.Y. 1997) (dismissing plaintiff's substantive due process claim where plaintiff's loss of property was also covered by the Fourth Amendment). In Heidorf, the court reasoned that "because plaintiff contends that defendants acted unreasonably at best in demolishing the Church, his claim fits squarely within the contours of the Fourth Amendment's protections. Because this claim is grounded in an explicit textual source, his substantive due process claim must be dismissed." Id.

The Court finds that similar to Heidorf, Plaintiffs' claims that the police training exercise constituted an unreasonable intrusion upon their liberty interests is derived from a more explicit textual source: the Fourth Amendment. Accordingly, Plaintiffs' substantive due process claims are dismissed.

18

**G. First Amendment**

Plaintiffs allege that Defendants' are liable for violating their right to freedom of association, as guaranteed by the First Amendment. Compl. ¶ 62. Specifically, Plaintiffs allege that this deprivation occurred when they were prevented from visiting with friends within the Complex while the training exercise was ongoing. See id. ¶¶ 33-36; 42.

The First Amendment right to association protects an individual's right to enter into an intimate relationship free from undue influence by the state. Sanitation & Recycling Indus., Inc. v. City of New York, 107 F.3d 985, 996 (2d Cir. 1997) (citing Roberts v. U. S. Jaycees, 468 U.S. 609, 617-18 (1984)). To state an intimate association claim, a plaintiff must show that "the particular relationships at issue . . . are generally protected . . . under the circumstances alleged." Patel v. Searles, 305 F.3d 130, 136 (2d Cir. 2002). Here, Gross alleges that his right to freedom of association was violated when he was prevented from visiting a friend's home during the training exercise. Compl. ¶¶ 33-36. Morales alleges that her rights were violated when a friend was not allowed to visit her during the training exercise. Id. ¶ 42. Plaintiffs' inability to visit with friends during the training exercise does not rise to the level of intimacy contemplated by this right. The right protects relationships that "attend the creation and sustenance of a family-marriage, childbirth, the raising and education of children, and cohabitation with one's relatives." Roberts, 468 U.S. at 620. A generalized right of social association is not recognized in the Constitution, see Sanitation & Recycling, 107 F.3d at 996, and intimate association claims based on friendships, however close, are insufficient to state a claim under the First Amendment. See, e.g., Robinson, 878 F. Supp. at 395 (rejecting plaintiffs' contention that temporary detention violated their right to association with whomever they wanted); Dupont v. N.J. State Police, No. 08 Civ. 10220, 2009 WL 2486052, at *9

(S.D.N.Y. Aug.14, 2009) (holding that friendship was insufficient to state a claim for intimate association); <u>Bates v. Bigger</u>, 192 F. Supp. 2d 160, 170 (S.D.N.Y. 2002), <u>aff'd</u>, 56 F. App'x 527 (2d Cir. 2002) (rejecting intimate association claim based on sexual relationship); <u>Berrios v. State Univ. of N.Y. at Stony Brook</u>, 518 F. Supp. 2d 409, 418 (E.D.N.Y. 2007) ("Where, as here, the relationship sought to be protected falls outside the familial arena, it has been held to be not similarly protected."). Accordingly, Defendants' motion to dismiss Plaintiffs' First Amendment freedom of association claim is granted.

### H. False Imprisonment

A claim for false imprisonment, whether brought under § 1983 or New York common law, is evaluated pursuant to the Fourth Amendment right to be free from unreasonable search and seizure. <u>Dzwonczyk v. Syracuse City Police Dep't</u>, 710 F. Supp. 2d 248, 263-264 (N.D.N.Y. 2008). In order to state a claim for false imprisonment, a plaintiff must allege: "(1) the defendant intended to confine the plaintiff (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." <u>Singer v. Fulton Cty. Sheriff</u>, 63 F.3d 110, 118 (2d Cir. 1995); <u>see also</u> <u>Hygh v. Jacobs</u>, 961 F.2d 359, 366 (2d Cir. 1992) (noting that false imprisonment claims brought pursuant to § 1983 are substantially the same as false imprisonment claims brought under New York State law).

With respect to Gross, the Court finds that the Complaint fails to allege that Gross was ever confined against his will. While Gross was prevented from accessing the parking lot and visiting a friend in the Complex during the training exercise, he was never restricted in his movement or confined in a given space. Consequently, Gross's false imprisonment claim is dismissed.

Morales, however, alleges that she was prevented from leaving the apartment where she had

been visiting a friend. Morales expressed a desire to leave the apartment, and was prevented from doing so by police. Defendants argue that any alleged confinement was privileged, pursuant to the community caretaking doctrine. City Mem. at 11. For the same reasons discussed with respect to Morales' Fourth Amendment claim, the Court finds that the community caretaking doctrine does not apply and that Morales has stated a plausible claim for false imprisonment.

## I. Negligence

Plaintiffs assert claims against the City and the AHA for negligence, based on their failure to properly train and supervise their employees. See generally, Compl. Defendants contend that Plaintiffs' negligence claims are should be dismissed on the grounds of governmental immunity. City Reply at 6-7; AHA Reply at 5-6. "When a negligence claim is asserted against a municipality or its employees, the threshold inquiry is 'whether the municipal entity was engaged in a proprietary function or acted in a governmental capacity at the time the claim arose.'" Velez v. City of New York, 730 F.3d 128, 134 (2d Cir. 2013). A municipality is deemed to be performing a proprietary function, and thus subject to ordinary tort liability, if it negligently provides services that are traditionally provided by the private sector. Applewhite v. Accuhealth, Inc., 21 N.Y.3d 420, 425-26 (2013). A municipality is performing a governmental function when its actions are undertaken pursuant to the general police powers for the protection and safety of the public. Velez, 730 F.3d at 134-135. "Providing police protection has long been recognized as a quintessential governmental function." Id. at 135; see also Applewhite, 21 N.Y.3d at 426 ("Police and fire protection are examples of long-recognized, quintessential governmental functions."). The Court finds that the police training exercise at issue in the present case is undoubtedly a governmental function. Accordingly, in order to recover on their negligence claims, Plaintiffs must prove that Defendants

owed them a "special duty." "[G]overnment action, if discretionary, may not be a basis for liability, while ministerial actions may be, but only if they violate a special duty owed to the plaintiff, apart from any duty to the public in general." <u>Valdez v. City of New York</u>, 18 N.Y.3d 69, 76-77 (2011). The plaintiff bears the burden of proving that a special relationship existed. <u>Velez</u>, 730 F.3d at 135.

> To establish a special relationship, four elements must be satisfied:
>
> (1) an assumption by the municipality, through promises or actions, of an affirmative duty to act on behalf of the party who was injured; (2) knowledge on the part of the municipality's agents that inaction could lead to harm; (3) some form of direct contact between the municipality's agents and the injured party; and (4) that party's justifiable reliance on the municipality's affirmative taking.

<u>Applewhite</u>, 21 N.Y.3d at 430-31. In the Complaint, Plaintiffs fail to allege any facts to suggest that a special relationship existed. Plaintiffs' argument that "it is inappropriate for defendants to raise the issue of a 'special relationship' at this stage of the litigation, because the question of whether a 'special relationship' exists is a ordinarily a question for the jury" misses the mark. <u>See</u> Opp'n at 25. While it is true that whether a special relationship exists is ordinarily a jury question, <u>see Velez</u>, 730 F.3d at 135, at the motion to dismiss stage, a "[p]laintiff's failure to allege or provide the factual predicate for the special relationship theory in her notice of claim or complaint" is grounds for dismissal. <u>Blackstock v. Bd. of Educ.</u>, 84 A.D.3d 524 (1st Dep't 2011). Since the Complaint fails to articulate the factual predicate for a special relationship between Plaintiffs and Defendants, Plaintiffs' negligence claims are subject to dismissal.

V.      **CONCLUSION**

Accordingly, it is hereby:

**ORDERED**, that Defendant Albany Housing Authority's Letter Request (Dkt. No. 15) to join the City of Albany's Motion to dismiss (Dkt. No. 11) is **GRANTED**; and it is further

**ORDERED**, that Defendants' Motions (Dkt. Nos. 11, 16) to dismiss are **GRANTED in part**, as to Plaintiff Gross' Fourth Amendment and False Imprisonment claims, Plaintiffs' Equal Protection claims, Plaintiffs' Substantive Due Process claims, Plaintiffs' First Amendment claims, and Plaintiffs' negligence claims, and **DENIED in part**, as to Plaintiff Morales' Fourth Amendment and False Imprisonment claims.

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:     September 29, 2015
           Albany, New York


                                Lawrence E. Kahn
                                U.S. District Judge